IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

\- - -

UNITED STATES OF AMERICA : CRIMINAL ACTION
: 23-CR-215-02
:
Plaintiff : James A. Byrne Courthouse
vs. : Philadelphia, Pennsylvania
: July 13, 2023
TORI SANDERS :
:
Defendant :

\- - - - - - - - - - - - - - - - - - - - - - - - - -

\- - -

TRANSCRIPT OF VIOLATION OF PRETRIAL RELEASE HEARING
BEFORE THE HONORABLE DAVID R. STRAWBRIDGE

UNITED STATES MAGISTRATE COURT JUDGE

\- - -

APPEARANCES:

For the Government: CHRISTOPHER PARISI, ESQUIRE
UNITED STATES ATTORNEY'S OFFICE
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106

For the Defendant: ELIZABETH TOPLIN, ESQUIRE
FEDERAL DEFENDERS OFFICE
601 Walnut Street, Suite 540
Philadelphia, Pennsylvania 19106

\- - -

Also Present: Tamika Baxley
Pretrial Services Officer

Deputy Clerk/
ESR Operator: Sharon Scott

TRANSCRIBED BY: Drummond Transcription Service
Haddon Heights, New Jersey 08035

Proceedings recorded by electronic sound recording, transcript produced by computer-aided transcription service.

(At 1:39 p.m. in Courtroom 5A.)

THE COURT: All right.

Tori Sanders, oh, here we are, okay. Thank you, Ms. Toplin.

All right, this is an initial appearance in connection with a violation for pretrial release.

Has there been any discussion between the Government and Ms. Toplin with respect to the proceedings and how we -- how we might proceed from here?

MS. TOPLIN: Your Honor, there have discussions and I'm very familiar with Ms. Sanders' case, however, I don't believe that we have an agreement as to the --

THE COURT: Okay, good, all right --

MS. TOPLIN: -- resolution here.

THE COURT: -- that's fine, that's perfectly fine. Okay. Counsel.

MR. PARISI: Your Honor, Christopher Parisi on behalf Government with me at counsel table is Tamika Baxley with Pretrial Services.

THE COURT: Ms. Baxley.

PRETRIAL SERVICES OFFICER BAXLEY: Hi, your Honor.

MR. PARISI: Your Honor, there's a -- a convoluted issue with this case, but the defendant was indicted back in May, she then was on pretrial release with a number of conditions through June. And -- and --

THE COURT: This is all of 2023?

MR. PARISI: Correct, your Honor.

We're talking the last month and a half, two months.

THE COURT: Hm-hmm.

MR. PARISI: The defendant failed in almost every respect on Pretrial Services, failure to report as directed, failure to return phones, cease controlled substance abuse, violations of location-monitoring services, so on and so forth.

As a result of that, a violation notice was -- initially, there was a two-week period, where Office Baxley just notified the Court of the problems, but continued supervision.

Several weeks went by, and they continued, the problems continued, Officer Baxley filed a violation of notice with Judge Hodge.

We had a hearing on the 11th of this month, we spent about an hour and a half with Judge Hodge, where we went over all of the violations and the defendant's requirements. The defendant acknowledged all of them.

And Judge Hodge modified the conditions to change the location-moderating from radio frequency to GPS monitoring, which required a switch out of the ankle monitor.

The defendant was ordered to go down --

THE COURT: And why was that done?

MR. PARISI: They just changed the ankle bracelet from one technology to the other.

THE COURT: Was that at the request of the -- of the defendant?

UNIDENTIFIED SPEAKER: Pretrial Services.

MR. PARISI: It was at the request of Pretrial Services and Judge Hodge ordered that on the 11th.

THE COURT: Okay.

MR. PARISI: The same day, the defendant was ordered to go to Pretrial Services to effectuate that change and while there, she became angry, ah, cursed out, Ms. Baxley and was told to leave the building, because of her behavior.

She was ordered to return the next day and in the interim, Judge Hodge issued a warrant for a violation of pretrial release.

My understanding is, yesterday, she appeared back at Pretrial Services and when the U.S. Marshals attempted to detain her, she fought with the U.S. Marshals to the point, where there was a physical struggle until they could get her into handcuffs and we're now here today.

So, it's the Government's position for all of those reasons, that she should be detained.

And I would just point out that we -- we had a scheduled status hearing for July 19th, next week with Judge Hodge before all of this happened in the last the last forty-eight hours.

So, we'd ask that she'd be detained and -- and we will

certainly, follow up with Judge Hodge on the 19th from there.

THE COURT: All right.

Is there any -- any suggestion that that date would be utilized for the purpose of making a final determination as to her status?

MR. PARISI: Well, we -- that's what we've been talking about, your Honor, we're trying to figure out, the best path forward and -- and that is our plan, your Honor, is to come up with a plan and approach Judge Hodge and see where we'd go from there.

THE COURT: All right.

With the notion -- with the notion, that the alternate objective is for the folks not to have to be on supervised release, if not necessary?

MR. PARISI: Correct.

It's -- it's a pretrial release, but yes, sir --

THE COURT: Yes.

MR. PARISI: -- if there is a -- a muse, where everyone feels that Ms. Sanders will be -- will no longer be a risk to herself and others, then that's always a possibility --

THE COURT: Okay.

MR. PARISI: -- but we're just not there right now.

THE COURT: So, of course, that's all up to Judge Hodge, obviously, and my responsibility is only to make sure, that she appears on the 19th of July?

MR. PARISI: Yes, sir.

THE COURT: Okay. All right.

Ms. Toplin?

MS. TOPLIN: Yes, your Honor.

And, your Honor -- your Honor, I -- this is Elizabeth Toplin, standing for Kathleen Gaughan, as I've indicated I am very familiar with this case, I've been working on it with Ms. Gaughan.

And I was present at the hearing on Tuesday when Judge Hodge ordered -- allowed Ms. Sanders to remain on bail and ordered that the monitoring devices be swapped.

Subsequent to that hearing -- and just so, the Court is aware -- at that hearing, were Ms. Sanders, her children's father and her sister and also her young two-year-old daughter, who was asked to -- ah -- go out of the courtroom, so was outside with the child's father.

Ah, subsequent to the hearing, Ms. Sanders did go to Pretrial Services, her sister went as well, they were arguing. Ms. Sanders, I'm going to --

THE COURT: You mean -- you mean, the two -- the two individuals?

MS. TOPLIN: The two sisters.

THE COURT: Yes, okay.

MS. TOPLIN: I -- I'm not going to suggest that Ms. Sanders was calm, because she wasn't, she was upset during the

hearing and the post hearing, but she did as she was told and she went to Pretrial and she stayed at Pretrial and she stayed a Pretrial, I think, that she got loud and -- ah, Ms. Baxley asked her to leave and to return the next day.

Ms. Sanders left, returned the next day as instructed and she did not know -- Ms. Sanders did not know that a warrant had issued. I don't even believe that Ms. Baxley knew that a warrant had been issued.

What happened was that Ms. Baxley -- ah, as per Judge Hodge's order, indicated the -- what's called, a disturbance that occurred in the Pretrial Office on the Tuesday before -- on the day before -- so, when Ms. Sanders returned on Wednesday, the -- the Marshals were there to arrest her, which came as a -- she was blindsided, basically.

And -- and she did struggle and I'm not -- I'm not denying that, however, ah, had that not occurred, had the Marshals not been there to, essentially, surprise her and take her into custody, because to her knowledge, she hadn't done anything wrong the day before, she was told to leave, she left and then, she came back.

So, ah, Ms. Sanders has two children, as I've mentioned, she's here today supported by her mother, they are in the front row, friends of the family, also --

UNIDENTIFIED SPEAKER: I'm the father.

MS. TOPLIN: -- her children's father.

So, your Honor, there is no question that, this case does have, in terms of its pretrial status, it has a bit of a difficult history. But the circumstances that bring us here today, I think, really result from more of confusion on Ms. Sanders' part.

THE COURT: More -- more of what?

MS. TOPLIN: Confusion, not knowing that the Marshals were going to be there to take her in to custody, because as far as she was concerned, she was doing exactly what she had been told to do, which was to leave on Tuesday and return on Wednesday.

So, I am mindful, I recognize that there is a hearing in a week, I realize that. But Ms. Hodge -- Judge Hodge had indicated that she was going to give Ms. Sanders a chance to do the right thing and to comply and Ms. Sanders thought, that she was on her way to doing that, when she was taken off the street.

So, I'm asking for --

(Coughing at 1:47 p.m.)

MS. TOPLIN: -- to allow her, give her the chance between now and next Wednesday, she appeared as directed yesterday, knowing that she was getting the monitor on her. She will appear next Wednesday. She and Ms. Baxley have a very open line of communication. So, I am asking the Court to allow her be released today.

In addition, your Honor, the Court should be aware

that she is on -- on, ah, suboxone, ah, so that has to, you know, if -- if the Court does not grant her release, that means to continue -- she's also pregnant.

So, for -- and she was concurrent with her suboxone and she was also in mental-health treatment, ah, part of the issue that brought us to court on Tuesday, was inconsistency related to her court treatment, but she in mental-health court treatment -- not mental-health court, she is in mental-health treatment at the Net.

And so, she does have the supports in place, she was making an effort to comply with the conditions and she -- she really hasn't had an opportunity to do that between Tuesday and today.

THE COURT: All right.

I'll hear from the Government.

MR. PARISI: Your Honor, just a couple of clarifications.

Judge Hodge requested the warrant, this was Judge Hodge's request for the warrant, because at our hearing on Tuesday, Judge Hodge made it abundantly clear, that any violation, no matter has minor, would result in detention.

She went so far as to tell the defendant, that if she appeared before Judge Hodge, again, on a violation, the Government wouldn't have to go so far as to make an argument for detention.

And it was twenty minutes later that the defendant caused a scene at Pretrial Services, which was loud enough, that she was ordered to leave the building.

The next day, when the U.S. Marshals did their job to serve the warrant on the defendant --

THE COURT: Well, wait a minute, before you -- before you'd get to that, then, I'm a little bit confused --

MR. PARISI: Yes, sir.

THE COURT: -- because, really, this is a determination for Judge Hodge, ultimately, to make.

MR. PARISI: Hm-hmm.

THE COURT: And I'm hearing, between Ms. Toplin and you, that they heard -- both of whom were present, yes --

MR. PARISI: Yes, your Honor.

THE COURT: -- at the time, that I'm hearing that Judge Hodge did not simply -- it -- it doesn't work for -- for either, Mr. Toplin or it doesn't work for the Government and which -- which is it?

MR. PARISI: Yeah, I'm sorry, your Honor?

THE COURT: It doesn't work -- the circumstances of what we'd have to do now, it's -- you know, understanding it's a -- it's a week and a week is only a week, but a week is a week.

And what I'm concerned about is, what was the understanding that Judge Hodge would have given to the participants, who were present -- Ms. Baxley -- Mr. Baxley, Ms.

Sanders and the -- their representatives, right, in terms of what might happen next?

If she had said -- indi -- if she has said as you suggested that, you know, the slightest infraction would be one that would require her to be brought back in and it's -- it's, you know, as I say, just -- a week is a week. But if that's the case, then I would -- I would agree with your position.

But what I hear from Ms. Toplin is, that she's demonstrated that she would come in -- she does have some support -- but she would come in and she did come in on the day after where she, apparently, according to her -- according to what I understand from Ms. Toplin -- didn't have any understanding as to what was there waiting for her -- whether or not, there was an obligation for that to be done or not, is -- is a different question.

But that's -- that's where I'm sort of getting to and that was the case, it seems to me, there might be -- there might be an acceptance of some risk, there would be for her not to appear and some -- you know, some -- some danger to the community.

But that's kind of -- that's kind of a situation, that Pretrial Services is -- you know, works -- works in all the time and I understand it and I get it.

MR. PARISI: Your Honor --

THE COURT: But I -- but, I mean, I guess, I'd want to

get to that part of Ms. -- Ms. Toplin's argument, that would pertain to an understanding, you believe and I -- would you -- I guess, you -- you think it's in terms, it should be covered the other way.

But apparently, from what I'm hearing from Ms. Toplin, it is that she believes that, reasonably, Ms. Sanders, ah, did not -- did not have any expectation as to why she was to be there, the next day, is -- is that a fair way to say it --

MS. TOPLIN: No, no, Ms. Sanders --

THE COURT: -- Ms. Toplin?

MS. TOPLIN: -- Ms. Sanders -- Ms. Sanders knew exactly, why she was to be there the next day, that was when she was told by Ms. Baxley to return to switch out the equipment. That's why she came back on Wednesday, because on Tuesday, she was told to leave, come back tomorrow morning between 9:00 and 12:00 and we're going to swap out your equipment.

THE COURT: Okay.

MS. TOPLIN: Leave, calm down, come back tomorrow, which is exactly what she did --

THE COURT: All right.

Well, what -- what's your --

MS. TOPLIN: -- so --

THE COURT: -- position on that?

MR. PARISI: Judge Hodge said, we're going to modify your conditions, we're coming back in one week on the 19th and

I'd want to hear that there's been no violations, absolute compliance.

UNIDENTIFIED SPEAKER: Hm-hmm.

MR. PARISI: And that's when Judge Hodge said to Ms. Baxley, if there is even slightest violation, I want to hear about it --

UNIDENTIFIED SPEAKER: Hm-hmm.

MR. PARISI: -- immediately.

Judge Hodge spent an hour and a half with the defendant, going line by lone through the conditions making sure the defendant understood them and that the defendant understood that she would not -- that Judge Hodge -- would not tolerate the slightest misstep going forward.

UNIDENTIFIED SPEAKER: Hm-hmm.

MR. PARISI: Twenty minutes later, the defendant caused a scene at Pretrial, which required her to be ordered out of the building, that's a violation twenty minutes, after Judge Hodge spent an hour and a half with her.

The next day at Judge Hodge's request, a warrant issued and the defendant's reaction to that -- while she may have been surprised and I understand that, I don't dispute that she was surprised -- her reaction to the U.S. Marshals trying to effectuate the warrant was to fight them. She fought the U.S. Marshals, the next day, rather than comply with a lawful order of this court.

So, I recognize that she returned the next day, but she violates her location monitoring, almost every day and she fights with law enforcement, that's an unacceptable risk for both appearance and the safety of the community.

Given we have a hearing next week, we'd ask that she be detained, at least, until that hearing.

THE COURT: Yes, all right.

Well, that -- the last part, is for sure, that's going to be -- up to Judge Hodge.

Ms. Toplin, do you want to respond one more time?

MS. TOPLIN: I -- I would just say there's really -- so, what Mr. Parisi just described is -- it's exactly, how I would describe it, I think, the difference between that recitation and the previous one, is that Judge Hodge did, in fact, tell Ms. Baxley, if anything happens, you'll let me know about it. I think that what Mr. Parisi said previously, is Judge Hodge said, she would issue a warrant if there was any violation.

So, in Ms. Sanders' mind -- and this is what the Court sort of needs to understand -- when she was told to leave and come back tomorrow, in her mind, she was -- it was no violation, I was hot, it was taken care of, I left.

UNIDENTIFIED SPEAKER: No, that's not it.

MS. TOPLIN: So, whether or not, Judge -- which exactly -- which is exactly, why she returned on Tuesday, calm

and ready to get her monitoring equipment switched.

THE COURT: Okay. Ms. Baxley.

PRETRIAL SERVICES OFFICER BAXLEY: Yeah, your Honor, I just want to be very clear, okay. All of what Attorney Toplin and Attorney Parisi is saying, is absolutely correct, I wanted to be clear.

When I directed Tori to leave the Pretrial Office, you know, she did in -- initially, say, you know, kept questioning why and I said, Tori, I need you to leave, you can, either, leave or I will have to call the Marshals to have you removed from the office. She left, she, her sister and her boyfriend, Richard left the Pretrial office.

When she left, I staffed the case with the supervisor, who was on duty, Supervisor Kim Colleto (ph) stated to me:

I want you to notify the Judge as she requested.

She said, any time you need to notify me, even if it's before the 19th, I need you to leave me know what's going on.

I sat at my computer, I typed out exactly what had just transpired. Unbeknownst to me, I'd receive an email back from Judge Hodge, that I am to file a petition for a warrant and have Tori come back before the Court and appear back before her for a violation of pretrial release.

Initially, in court on Tuesday, it was scheduled for next Wednesday to be a status report, that is being changed into

a violation of pretrial release hearing to determine whether Ms. Sanders will remain in the community or whether she'll be detained pending any further court proceedings.

So, I just wanted to be clear, that I emailed the Judge and told her, what happened and her directive back to me was:

I want you to file a petition for a warrant.

So, I did what was asked of me and no, I did not convey that to Tori, because the day before that, she was already hostile in my office.

No, I did not call her and say, hey, Tori, we have a warrant for your arrest, I need you to come into the office. I allowed her to come on in, while I typed up the warrant. The warrant was executed, the morning before -- two hours before -- she reported, the warrant was docketed. So, I just wanted to be clear about that.

THE COURT: All, right, okay.

This is very difficult for me to make determination, I realize, as you have said, it's a week -- it's a week.

But my judgment is, that we're trying to read tea leaves with respect to what Judge Hodge said or didn't say.

My judgement is that the circumstances here are such, that it would be appropriate and proper for her to be detained pending the final hearing with -- that you're going to have with them on the 19th of July. So, that's the -- that's the way the

order will be. Thank you.

PRETRIAL SERVICES OFFICER BAXLEY: Thank you, your Honor.

MR. PARISI: Your Honor, that concludes my business, may I be excused?

THE COURT: Yes, you may.

MR. PARISI: Thank you.

THE COURT: Thank you, Mr. Parisi.

(Mr. Parisi leaves the courtroom at 1:56 p.m.)

(Adjourned in this matter at 1:56 p.m.)

* * *

C E R T I F I C A T E

I, a court-appointed transcriber, certify that the foregoing is a correct transcript from the electronic-sound recording of the proceeding in the above-entitled matter.

Date: 5/2/24

Gail Drummond
28 8th Avenue
Haddon Heights, New Jersey 08035
(856) 546-6270