IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | 23-CR-215-02 |
| | : | |
| Plaintiff | : | James A. Byrne Courthouse |
| vs. | : | Philadelphia, Pennsylvania |
| | : | July 19, 2023 |
| TORI SANDERS | : | |
| | : | |
| Defendant | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

- - -

TRANSCRIPT OF THE BAIL REVOCATION HEARING
BEFORE THE HONORABLE KELLEY B. HODGE
UNITED STATES DISTRICT COURT JUDGE

- - -

APPEARANCES:

For the Government:     CHRISTOPHER PARISI, ESQUIRE
                       UNITED STATES ATTORNEY'S OFFICE
                       615 Chestnut Street, Suite 1250
                       Philadelphia, Pennsylvania  19106

For the Defendant:     KATHLEEN GAUGHAN, ESQUIRE
                       FEDERAL DEFENDERS OFFICE
                       601 Walnut Street, Suite 540
                       Philadelphia, Pennsylvania  19106

- - -

Also Present:          Tamika Baxley
                       Pretrial Services Officer
Deputy Clerk/
ESR Operator:          Leesa Ciamaichelo


TRANSCRIBED BY:        Drummond Transcription Service
                       Haddon Heights, New Jersey  08035

     Proceedings recorded by electronic sound recording,
transcript produced by computer-aided transcription
service.

1          (At 1:28 p.m. in Courtroom 4B.)

2          DEPUTY CLERK:  All rise.

3          Court is now in session, the Honorable Kelly B. Hodge

4     presiding in the matter of the United States v. Tori Sanders,

5     Criminal No. 23-215-02.

6          THE COURT:  Good afternoon, everyone, you may be

7     seated.

8          ALL PRESENT:  Good afternoon, your Honor.

9          THE COURT:  Counsel and Ms. Sanders, we are here today

10    on a bail revocation hearing, following Ms. Sanders being taken

11    into custody last week on a warrant and that was subsequent to a

12    hearing of a similar nature, that we had last week on July the

13    11th in this courtroom at 1:00 p.m., where I had ordered to

14    continue the bail status of Ms. Sanders and that she could

15    remain on pretrial release with conditions and elevated

16    conditions, including GPS.

17         Since that time, as I stated, Ms. Sanders was taken

18    into custody following the Court being notified by the Pretrial

19    Services Officer, Ms. Baxley, of some concerning behavior that

20    raised the level of concern for the safety of Ms. Baxley.

21         As well as evidence to me of a concern for Ms.

22    Sanders' ability to follow the pretrial conditions that were in

23    place and the additional elevated condition that was going to be

24    put in place of a GPS monitoring system.

25         So, with that, we are here today to conduct a hearing

1   and to make a determination by me as to what the status of Ms.

2   Sanders will be from this point moving forward as to whether or

3   not, she will return to Pretrial Services supervision outside of

4   custody or whether she will have her bail revoked and remain in

5   custody.

6          In advance of any decision on that, I would like to

7   hear from the Government as well as from then, her counsel,

8   regarding any additional information and/or argument that you'd

9   wish to make about the status of Ms. Sanders.

10         MR. PARISI:  Thank you, your Honor, Christopher Parisi

11  for the Government.

12         Your Honor covered the -- the sort of -- procedural

13  history.  I'd just note that when the defendant was taken into

14  custody by the Marshals she struggle with them as well, there

15  was a -- a fight with the Marshals.

16         And on its face, this is a clear case for detention

17  and -- and nevertheless, I think, everyone in this room sees

18  something in the defendant, that we'd like to -- ah -- take

19  another shot at, maybe, addressing the underlying issues before

20  we'd simply throw away the key and lock her up until the trial.

21         I don't believe, there is any contest over the

22  violation, I think, everyone agrees that there is a violation

23  here.

24         It's the Government's position that, the defendant

25  should be detained at this point, pending an evaluation for

1    possible re-release on pretrial supervision.

2         But right now, today, it's clear that the defendant is

3    not in a place where she's able to comply with the Court's

4    conditions.  And she poses a risk, I think, both to herself and

5    to others.

6         And until and unless, we can get more visibility into

7    what's going on with her, it's the Government's position that

8    she must be detained.

9         I know, Ms. Baxley, who is here from Pretrial Services

10   has spoken with Dr. Laura Conney Cox, who is available, I

11   believe, next Friday, the 28th to conduct a -- an evaluation of

12   the defendant.

13        And so, it's the Government's recommendation that this

14   Court order continued detention, order an evaluation by Dr.

15   Cooney Cox, specifically, to evaluate the defendant for possible

16   re-release on to Pretrial supervision and -- but unless and

17   until, we have that evaluation, we simply can't get to that next

18   step.

19        So, unless, the Court has additional questions, that's

20   really all I have for today's purposes.

21        THE COURT:  Thank you.

22        Counsel, Ms. Gaughan --

23        MS. GAUGHAN:  Thank you, your Honor.

24        THE COURT:  -- do you have anything you would like to

25   state?

1    MS. GAUGHAN:  Ah, in my discussions with Ms. Sanders,

2    she was asking me to, again, reiterate to the Court -- which I

3    had stated before -- that, obviously, we had a full hearing

4    before the Court and as the Court has noted, the -- the Court

5    took a chance, again, detailing to Ms. Sanders, that her

6    liberty, really was for her, ah, to either have or not have, as

7    you stated, the keys were on the table and not in her hand at

8    the time, you gave her additional conditions.

9         I say that, Judge, because we has a full hearing and

10   there were numerous violations and we all, I think, we can all

11   agree, there were.

12        And in spite of those violations, you had a very long

13   and detailed discussion with Ms. Sanders, instructing her that

14   you were going to take a chance.

15        There is no question, that there was behavior in the

16   Pretrial office that should not have been, there's no doubt

17   about it, Ms. Sanders did not handle herself well.  The only

18   thing I will point out to the Court, is that it wasn't a very --

19   it was a very emotional day.

20        And again, when -- when she had this behavior and was

21   told to leave, she did leave, she did what she was supposed to

22   do, she did collect herself and come back.

23        And while there was -- ah, a -- she was not compliant,

24   I guess, is the word, that escalated with the Marshals.  In

25   fairness to Ms. Sanders, she believed that she was going to

1    Pretrial Services -- and she was told that by me, because that

2    was my understanding -- that she was going to go to Pretrial

3    Services, she was going to get the equipment changed out and she

4    was going to be placed back on a more stringent house arrest

5    with GPS tracking.

6         I'd say that, Judge, again -- and I understand, the

7    Government's request, I understand everything that was discussed

8    in terms of her treatment.  Again, Ms. Sanders is asking me that

9    she's more than willing to go into treatment, she's more than

10    willing have the evaluation done.

11         She's asking me to ask this Court to order it on a --

12    an out-of-custody basis as opposed to the same doctor coming to

13    -- ah -- the FDC to conduct the evaluation to -- to make a

14    determination as to what best would fit for -- ah -- Ms.

15    Sanders.

16         I think, part of Ms. Sanders' -- I don't know, if

17    frustration is a word or -- it's that as she's told me, she has

18    had mental-health issues and I think, her sister, who is in the

19    courtroom, can attest to that as well since she was thirteen

20    years old.

21         She has been evaluated a number of times, she's been

22    302'd in her life and, basically, she did just have an

23    evaluation now, I know and -- and I'm in disagreement with the

24    officer, that the next evaluation is far from perfect.

25         But her point to me and I think, it's a point well

1    taken, is how many times do you want me to answer, those same

2    questions?  Ah, she's been on medication, she been on a lot of

3    different psychotic-tropic medications, she's been diagnosed

4    with bipolar, I think, even, the Net diagnosed her with bipolar.

5         So, I think, her -- her head is trying to get around,

6    yet another evaluation.  What I have explained, is that -- that

7    this particular doctor is a very meticulous doctor, she's very

8    precise, she's going to be able to a -- a fuller evaluation.

9    But again, in fairness to my client, she wants me to make these

10   things known to the Court, so as her attorney, I'm doing that.

11         THE COURT:  Thank you, Counsel --

12         MS. GAUGHAN:  Thank you.

13         THE COURT:  -- I appreciate that.

14         I will state that, what was evident in terms of, at

15   least, in leaving this court last week on the 11th and

16   anticipating returning this week, because we had this date

17   scheduled with Ms. Sanders being out of custody and walking

18   through the door, as opposed to coming in with the escort of the

19   U.S. Marshals in an in-custody status.

20         You are correct, it was really up to her as to whether

21   or not, that would, in fact, happen.

22         And I do appreciate that Ms. Sanders feels, a level of

23   frustration as to how often, she needs to answer the same

24   questions, as you stated, regarding her mental-health and

25   psychological needs.

1           And I think, part of it -- can't agree, it's a

2    developing process -- in order to try to make sure that what is

3    put in place to assist her, is really helping her, long term,

4    not short term, but long term.

5           And so, I think that -- I hear what you've stated on

6    behalf of your client and I definitely will want to hear from

7    her in a moment as well and I'm going to hear from Ms. Baxley as

8    well.

9           And so, in a moment, I'm going to my ask my Deputy

10   Clerk swear both of them in, but before doing that, I noticed

11   that you stated, her sister is in court.

12          And I also see, I believe, the -- the gentleman, who

13   was here last week with her is in court.  And so, if you'd want

14   to identify anyone else, that's here in support of her, because

15   that is also a factor that the Court takes into consideration as

16   well as to what members of the community, family and otherwise,

17   are here.  And will remain here for her in support during what

18   is, a stressful, difficult, complicated process, that is only in

19   place at this point, because of an allegation, that is serious

20   of a felony-robbery charge.

21          MS. GAUGHAN:  Thank you, your Honor.

22          And I apologize, that I did not, actually, identify

23   them, I -- I -- I meant to, actually.

24          THE COURT:  That's okay.

25          MS. GAUGHAN:  Her sister is Ashley Boswell.

1         And could you identify yourself, sir?

2         MR. RICHARDS:  Robert Richards, I --

3         MS. GAUGHAN:  And Robert Richards and he was here last

4    week before the Court.  And he is Ms. Sanders' boyfriend.

5         THE COURT:  And it's Robert Richardson, correct,

6    not --

7         MS. GAUGHAN:  Richards, right?

8         THE COURT:   -- Richards.

9         THE COURT:  Okay.

10        MS. GAUGHAN:  Okay.

11        THE COURT:  And Ashley Boswell, am I correct?

12        MS. GAUGHAN:  Correct.

13        (Discussion held off the record at 1:38 p.m.)

14        THE COURT:  If you would like to take a moment, Ms.

15   Gaughan, to identify and get the names and then, identify for

16   me, the other family members --

17        MS. GAUGHAN:  Thank you.

18        THE COURT:  -- who are -- other friends, who have

19   arrived?

20        (Long pause at 1:39 p.m.)

21        MS. GAUGHAN:  All right, your Honor, the additional

22   people that just entered the courtroom on behalf of Ms. Sanders,

23   is her mother, Angela Boswell, ah, the -- her children's father,

24   Danny --

25        UNIDENTIFIED SPEAKER:  Clark.

1    MS. GAUGHAN:  -- Clark.

2    London, what is your last name, London?

3    UNIDENTIFIED SPEAKER:  Brown.

4    MS. GAUGHAN:  Brown, her cousin.

5    And Danya (ph) --

6    (Discussion held off the record.)

7    MS. GAUGHAN:  What's your last name, I'm sorry?

8    UNIDENTIFIED SPEAKER:  Keaton.

9    MS. GAUGHAN:  And Danya Keaton, which is also her

10   cousin.

11   THE COURT:  Okay.  Thank you, Counsel.

12   At this time, I am going to ask, my Deputy Clerk to

13   swear in Ms. Sanders as well as Ms. Bagley -- Baxley, rather.

14   DEPUTY CLERK:  Ms. Sanders and Ms. Baxley, please rise

15   and raise your right hand.

16   TONI SANDERS, THE DEFENDANT AND TAMIKA BAXLEY,

17   PRETRIAL SERVICES OFFICER, SWORN.

18   PRETRIAL SERVICES OFFICER BAXLEY:  I do.

19   THE DEFENDANT:  Yes.

20   DEPUTY CLERK:  Thank you.

21   THE COURT:  I will begin asking, Ms. Baxley, to

22   provide to me, any additional information, that she would like

23   to offer in regards to, Ms. Sanders as well as what has been

24   already articulated by counsel for the Government about what

25   could be, in essence, a recommendation as to how to approach

1   things moving forward with Ms. Sanders and the concerns she

2   presents regarding her diagnoses as well as, potentially,

3   addictions and needs.

4           PRETRIAL SERVICES OFFICER BAXLEY:  Sure, your Honor,

5   may it please the Court.

6           I echo the sentiments of Assistant U.S. Attorney

7   Christopher Parisi and I do hear what Attorney Gaughan is saying

8   with respect to Ms. Sanders.

9           I -- I'm gonna be very transparent and say, I believe

10  at the beginning of this case, that we did a disservice to Ms.

11  Sanders.  I'd say, we, as in the Pretrial Services Office.

12          Albeit, there were things, that we did not know, there

13  were things that was not reported to us.

14          Ah, but in working with her, Ms. Sanders, when she was

15  initially released, getting the results back from the physical

16  report, lab report -- report, that I think, your Honor, has

17  seen, and getting the results back from the psych. eval., ah, my

18  first instinct in staffing with my supervisor in May and the

19  discussion, that I actually, had with her sister, was to get her

20  into inpatient.

21          Ah, I did take into account, that she had her

22  children, ah, I did take into account during that time, that she

23  was on an ankle monitor.  There was a lot of moving parts and a

24  lot of information, that I did not know.

25          Ah, and when everything transpired -- I don't need to

1    relive that, we all know why we're here -- and in talking with

2    the District Attorney about her mental-health court status, her

3    attending mental-health court, I was, actually, impressed to say

4    the least, that she was attending mental-health court with the

5    county, ah, Philadelphia County.  I thought that was

6    impressionable.

7        So, it made a -- ah -- it did help me decide that I --

8    I feel, like, down the line, we can re-release, ah, Tori to

9    Pretrial supervision.  I -- I'm confident with that with the

10   additional GPS equipment.

11       Ah, with her having to do inpatient, right now, I am

12   currently working on providing placement for her.  I will be

13   working with, hopefully, if Kathy can get those releases signed,

14   I will be working with --

15       UNIDENTIFIED SPEAKER:  That's --

16       PRETRIAL SERVICES OFFICER BAXLEY:  Thank you.

17       -- I will be working with the district attorney, not

18   with the social workers or case managers and I have my own stash

19   of places that I'm going to be looking into as well.

20       I feel, like, there needs to be a reset button on her

21   bail release.  And it starts with, putting Tori in inpatient and

22   getting her, the help that she needs.

23       I understand, she's had an evaluation with the county,

24   she was deemed competent.  I understand that she went through

25   testing there.  She's met with the -- with the psychiatrist at

1   the Northeast Treatment Center.  And I appreciate the

2   information, that they gave me, I don't think, it captures the

3   whole picture.

4         And until we know fully, what is going on with Tori,

5   her response to law enforcement, her response to the U.S.

6   Marshals last week, is a concern for me, that there needs to be

7   more, there has to be more there, that's there's something that

8   we're missing.

9         I staffed the case with my supervisor, I told him, my

10   proposal for re-release, after we'd gotten the evaluation and

11   she's completed a period of time in inpatient treatment and he

12   was in agreement with me, that there is something, that we are

13   missing.

14         Ah, I can say to you, that I -- I usually, defer to,

15   you know, ah, to the Assistant U.S. Attorney with my

16   recommendation for detention, but that's not how I feel in this

17   case, ah, and I'm considering everything.

18         I am considering how she's released this time, ah,

19   with inpatient placement, most times, inpatient facilities, can

20   develop a plan of release, that includes housing for she and her

21   children.

22         Maybe, down the line, she will successfully complete

23   Philadelphia County mental-health, with our assistance, that she

24   continues to attend treatment.  My understanding from them, is

25   treatment was a major component, that was missing in her

1    attendance with mental-health court.

2         So, I'm hoping that she benefits from everything that

3    we are doing and putting in place for her to come up with a

4    better release plan, so that she can remain out and in the

5    community before she is sentenced for her case before, your

6    Honor.

7         THE COURT:  Thank you, Ms. Baxley.

8         Ms. Sanders, I'd like to hear from you, I don't -- I

9    know we've talked and have been talking about you and again, my

10   hope was to see you today, coming in to this courtroom from a

11   different position -- from a different place, than how I'm

12   seeing you right now.

13        And I think, in listening to what has been said by

14   everyone, including your attorney, I'd want to hear from you,

15   regarding anything that you'd want me to consider, before I'd

16   make the decision about whether or not, I should revoke your

17   bail and hold you or whether or not, you believe, you should be

18   released back into the community while your charges are pending

19   before this Court.  So, please.

20        THE DEFENDANT:  Well, like, last week, I said I was

21   gonna go what I had to do, I didn't get the chance to prove my

22   point.

23        Then, with the Marshals, I don't know, I apologize

24   about that, because I didn't even know, I had a warrant, I just

25   thought that was -- my house being changed.

1    So, ah, I probably, did react the wrong way, but

2   there's nothing I can do now.  I apologized to the Marshals and

3   all of that, but I don't know.

4       THE COURT:  Okay.

5       I appreciate and hear your apology and I am sure, they

6   to, too.  And I know, that Ms. Baxley hears it as well.

7       I want you to take a moment -- just a moment -- to

8   just give the Marshals a -- I just you to turn around and see

9   your family and see who is behind you, okay?  So, if you could

10  just stand and turn around and see, who is behind you.

11      (Pause at 1:47 p.m.)

12      THE COURT:  All of those people are here for you,

13  okay, do you understand that?

14      THE DEFENDANT:  (No verbal response.)

15      THE COURT:  All of them are here, because they love

16  and care about you, Ms. Sanders, you.  You can have a seat.

17      The reason that I want you to see them and I want them

18  to see you, it's because the decision, I am going to make at

19  this point in time, it is for the betterment of you, as well as

20  ensuring the safety of the community in order for those things

21  that I've heard, read, seen about you to be addressed.

22      And until they are addressed, I cannot believe fully,

23  that you, potentially, would be safe and well for yourself, for

24  others and most importantly, for your children.  Okay, Ms.

25  Sanders?

1          THE DEFENDANT:  (No verbal response.)

2          THE COURT:  You understand, what I am saying?

3          THE DEFENDANT:  (No verbal response at 1:48 p.m.)

4          THE COURT:  And I'll let the record reflect that she

5     nodded in the affirmative.

6          What I did not have available to me the last week,

7     when I, originally, saw you was the Pretrial Services report.  I

8     have had the chance to see that report, that report was dated

9     May 18 of 2023, it was done in advance of your initial release

10    with conditions and was provided to Judge Sitarski.

11         In that, I was able to see your prior criminal contact

12    and, specifically, to know that you are involved in a mental-

13    health court program, with the City of Philadelphia through the

14    district attorney's office on a pending charge, that you have

15    there.

16         And as Ms. Baxley just said, that is good and helpful

17    information to know as to the extent of what they are doing.

18    But you are currently out on a $75,000.00 unsecured bail with

19    the county in that regard.  And you were on that bail, when it

20    is alleged, that you engaged in the behavior that has you before

21    this Court, I've looked at that.

22         I also took the time to re-read and look at the

23    letters that I received from Pretrial Services, specifically,

24    the letter dated June the 2nd.  And then, also, the additional

25    letter I received on July, the 3rd.  And then, the letter I

1    received on July the 14th from Ms. Baxley.

2          And in addition, what I was notified of following

3    court via email on July the 11th, regarding your interactions

4    with Ms. Baxley in the attempt to put you on a GPS monitor on

5    that date, because you were hoping and you should have been

6    placed on a GPS monitor following court last week.

7          And that was carried over to the 12th, which was the

8    date that you were taken into custody, because of your conduct

9    and them not being able to actually, put you on the GPS monitor.

10         So, in light of all of those things and all of the

11   information contained in the reports that I have read, you were

12   released on bail conditions pursuant to 18 USC, Section 3148 --

13   or rather, a correction -- Section 3142(g).

14         I am reviewing this today under Section 18, USC,

15   Section 3148.  And in reviewing it under that condition last

16   week, I said, that I found clear and convincing evidence that

17   you violated.

18         And I continue on with that posture of the Court, that

19   I found fair and convincing evidence that you violated and

20   candidly, you don't negate that, you didn't negate it then,

21   you've owned that component of this hearing, that you did not do

22   everything that you were supposed to do.  And -- and you assured

23   me then, that you would do better.

24         What I now find, that I did not conclude last week,

25   when I made the decision to allow you to remain out on bail, but

1   what I find today is that at this point in time, you seem

2   unlikely to abide by any condition or combination of conditions

3   of release at this point.

4          And so, therefore, I am revoking your bail and will

5   have you remain in federal custody, pending trial, but with the

6   condition that -- and will order -- that you are evaluated for a

7   psychological evaluation based upon the Government's request and

8   recommendation.  And that that evaluation will be conducted by

9   Dr. Laura Cooney Cox, I believe, on July 21, 2023, am I correct,

10  Counsel?

11         MR. PARISI:  The 28th, your Honor.

12         THE COURT:  The 28th.

13         And that I am wiling and this Court is willing to

14  continue this matter or rather strike that.

15         I am willing to consider releasing you, following that

16  evaluation and following whatever recommendations are made,

17  based upon that evaluation, expecting that the recommendation

18  may warrant an inpatient treatment, followed by a level of

19  outpatient treatment services.

20         I think, some of the things, that we don't yet know

21  fully about your past use of alcohol, drugs, anything that you

22  may have been prescribed, that you, may be, not taking in the

23  manner in which it was prescribed for you, all of those things

24  are going to come to light at the evaluation, which will be

25  comprehensive and will allow everyone here -- but most

1  importantly, your counsel and your family -- to put the things

2  in place in order to help you.

3          So that, you in turn, can help yourself and help,

4  those you're responsible for taking care of, which are your

5  children.

6          And so, I think, I said last week and I'm going to say

7  it again, that if there is anything that you should look to to

8  say, why I'd need to do what I need to do to cooperate, to take

9  a breath before acting, to try and tell all that you'd need to

10 tell to the doctor and anyone else who is there to help you,

11 including Ms. Baxley, your children are the reason why.

12         And I don't believe, there are any other conditions --

13 I'm looking -- that I'd need to put in place at this time.

14         I will just await any further advisement by the

15 Government on the report that will come back from the doctor,

16 once it is received.

17         And then, look for any appropriate motions to be made

18 at that time and brought to my attention by Ms. Sanders' counsel

19 and/or the Government in order to go ahead and, presumably, put

20 her in a placement, that will have her receiving the support

21 mechanisms, that she needs.

22         And then, hopefully, eventually, having Ms. Sanders in

23 a position, where I will see you, Ms. Sanders, hopefully,

24 walking through the doors of this courtroom and walking out the

25 doors of this courtroom, not in the custody of the U.S. Marshals

1    as you are here today.

2         Is there any other business before this Court, that

3    I'd need to address, that I haven't addressed, thus far, Mr.

4    Parisi?

5         MR. PARISI:  Not from the Government, your Honor, no,

6    thank you.

7         THE COURT:  Ms. Gaughan?

8         MS. GAUGHAN:  No, your Honor.

9         THE COURT:  Okay.

10        Ms. Sanders, is there anything else?

11        THE DEFENDANT:  No.

12        THE COURT:  Okay.  You take care.

13        To the family, thank you for coming down here today,

14   your presence evidences to this Court and to me, how important

15   Ms. Sanders is to you and she is going to need that in order to

16   go ahead and help through all of this and beyond this.  Because

17   this will be behind her at some point and you also need to be

18   there for her.  So, thank you for that.

19        UNIDENTIFIED SPEAKER:  Thank you.

20        THE COURT:  If there is no further business before the

21   Court, then the Court is going to stand adjourned.

22        MS. GAUGHAN:  Thank you, your Honor.

23        DEPUTY CLERK:  All rise.

24        (Adjourned in this matter at 1:56 p.m.)

25                              * * *

<u>C E R T I F I C A T E</u>

I, a court-appointed transcriber, certify
that the foregoing is a correct transcript from the
electronic-sound recording of the proceeding in the above-
entitled matter.


Date:  5/2/24

Gail Drummond
28 8th Avenue
Haddon Heights, New Jersey  08035
(856) 546-6270